IN THE MATTER OF THE CIVIL CONTEMPT OF JAMES D. CARTON, III, AN ATTORNEY AT LAW (FROM ORDER).

IN THE MATTER OF THE CONTEMPT OF JAMES D. CARTON, III (FROM FINDING) (ASSOCIATED FUNDING CO. v. CONTINENTAL CASUALTY COMPANY, A CORPORATION).

Argued June 6, 1966—Decided July 20, 1966.

*Mr. Theodore D. Parsons* argued the cause for appellant, James D. Carton, III (*Messrs. Carton, Nary, Witt & Arvanitis,* attorneys).

*Mr. Alan B. Handler,* First Assistant Attorney General, argued the cause for respondent (*Mr. Evan William Jahos,* Assistant Attorney General, on the brief; *Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Mark F. Hughes, Jr.* argued the cause for New Jersey State Bar Association, *amicus curiae* (*Messrs. Adrian M. Foley, Jr., John J. Gibbons,* and *Daniel Lewis Golden,* attorneys).

*Mr. John E. Toolan* argued the cause for Monmouth County Bar Association, *amicus curiae* (*Messrs. Louis P. Introcaso, Robert Ansell, Robert M. Hanlon,* and *Norman H. Mesnikoff,* attorneys).

*Mr. William M. Feinberg* argued the cause for Intervenor, The Hudson County Bar Association (*Messrs. Feinberg, Dee & Feinberg,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J. Appellant refused to sign a pretrial order because he believed it did not set forth fully the position of his clients. Upon his continued refusal to sign, he was adjudged "guilty of contempt," fined $25, and ordered committed to the county jail "until he shall pay * * * the sum so ordered and shall sign the Pretrial Order, unless the Court shall see fit sooner to discharge him." We certified his appeal before argument in the Appellate Division.

## I.

Appellant contended the court lacked jurisdiction of his clients and so asserted in the answer to the complaint. Motions to quash the service of process were twice denied, and the Appellate Division refused to allow an appeal. Deeming that issue to have been fully decided, the pretrial judge would not include it in the pretrial order as an issue for the trial. Appellant seemingly agreed that the earlier orders decided the issue of jurisdiction on the merits but thought the subject had to be noted nonetheless in the pretrial order to preserve his right to appellate review.

■ Appellant's fear was unwarranted. An appeal from a final judgment raises the validity of all interlocutory orders, and if the order refusing to quash the service disposed of that issue on its merits, as seems to be conceded, there was no obligation to renew the quarrel at trial. Nonetheless appellant was not captious in asking that the pretrial order reflect either the alleged defense or its prior disposition. *R. R.* 4:29–1(b) prescribes the content of the pretrial order and provides in item 8 for "A specification of the legal issues raised by the pleadings which are abandoned *or otherwise disposed of.*"[1] The italicized phrase, added by amendment in 1964, apparently was unnoticed in the argument before the trial court.

Ultimately, the pretrial judge and appellant took positions which were tweedledum and tweedledee. To protect appellant from his fear of "waiver" of appellate review, the trial court spread appellant's position fully on the stenographic record of the conference but not in the pretrial order itself, while appellant, observing that he and the stenographer were perishable, wanted a notation in the pretrial order of the existence of that stenographic record. Believing this final stance was frivolous and obstructive, the trial court directed appellant to sign the pretrial order, and appellant continuing to refuse, there emerged the judgment assailed before us by appellant and several bar associations which rally around him.

■ As we have already said, appellant was correct in asking that the disposition of the separate defense be noted in the pretrial order. We think, too, that a trial court should not order counsel to sign a pretrial order he questions. *The Manual of Pretrial Practice* (*Rev.* 1959), prepared by the

---

[1] *R. R.* 4:29–1(b)(8) reads in full:

"A specification of the legal issues raised by the pleadings which are abandoned or otherwise disposed of. No legal issue should be ruled upon at the pretrial conference as to which there is any doubt or reasonably arguable question. If a ruling is sought on any such legal issue, the matter should be set forth with directions that formal motion be made thereon at a later time, before the pretrial judge, if possible."

Administrative Office of the Courts, which was not cited before the trial court, reads (*p.* 3):

"The pretrial order is, of course, a step in the cause with the full force of other orders of the court. However, it is also a stipulation of the parties. The parties are, therefore, entitled to have included therein any legal or factual contention deemed important to their claim or defense and covered by the pleadings. This right must be recognized by the pretrial judge and *counsel should never be required to sign an order not considered by them adequate to cover their position.*" (Italics added)

*R. R.* 4:29–1(b) does provide that the pretrial order "shall be signed by the court and the attorneys for the parties," but the sense of that provision is correctly set forth in the quotation just made from the Manual. Nor is there need to compel counsel to sign. Other sanctions are available,[2] and if need be a binding pretrial order may be entered without the signature of counsel upon a recital of his refusal to sign. See *Life Music, Inc. v. Edelstein,* 309 *F.* 2d 242 (2 *Cir.* 1962).

But although, as we have said, appellant correctly asked that the pretrial order reflect the disposition of his client's separate defense, he was wrong in resisting the court's direction to sign the order. There must be no defiance of a court, least of all by one of its officers. It is no excuse that the trial judge may be in error. Courts of appeal exist to hear such claims. One who is dissatisfied with the action of a court must obtain a stay or obey the order. He may not ignore it.

---

[2] *R. R.* 4:29–1(c) reads:

"Failure to prepare for, appear at, or fully participate in, a pretrial conference, unless good cause is shown for any such failure, is an improper interference with the proceedings of the court. For any such failure the court shall order any one or more of the following: (1) the payment by the delinquent attorney or delinquent party of costs, in such amount as the court shall fix, to the clerk of the county in which the action is pending or to the adversary party; (2) the payment by the delinquent attorney or delinquent party of counsel fees and expenses to the adversary party; (3) the dismissal of the complaint, cross-claim or counterclaim, or the striking of the answer and the entry of a judgment by default; or (4) such other action as it deems advisable."

We are referred to cases which hold that a party may at his peril ignore an order which is beyond the jurisdiction of a court, meaning that he may in contempt proceedings against him litigate the jurisdictional validity of the order and come out unscathed if the order falls on that account. See *In re Application of Tiene,* 17 *N. J.* 170, 177 (1954); Annotation, "Right to punish for contempt for failure to obey court order or decree either beyond power or jurisdiction of court or merely erroneous." 12 *A. L. R. 2d* 1059 (1950).

We see no room for that concept in the present setting. There is no question about the jurisdiction of the pretrial judge with respect to either the parties or the subject matter of the pretrial conference. The rules direct that a pretrial order shall emerge and be signed by counsel. Even if the order upon counsel to sign was unwarranted or ill-advised, it cannot be said, in the words of Mr. Justice Frankfurter, that the trial court was "so obviously traveling outside its orbit as to be merely usurping judicial forms and facilities." *United States v. United Mine Workers of America,* 330 *U. S.* 258, 309, 67 *S. Ct.* 677, 704, 91 *L. Ed.* 884, 921 (1947) (concurring opinion).

Whatever may be the utility in other settings of the proposition that an order may be ignored if beyond the jurisdiction of the court, it ill suits the present scene. Here the controversy arose in open court, and the power of a judge to control the proceedings then and there before him was challenged. Moreover, as we have said, the controversy concerned the court and one of its officers. A lawyer should be loath to test the validity of a judge's ruling by an adamant refusal to yield. *Cf. State v. Smith,* 46 *N. J.* 510, 517 (1966). Nor would we be fair to counsel if we required him to run the risk of that course.[3]

---

[3] The Monmouth County Bar Association refers to *Canon* 15 of the Canons of Professional Ethics, which reads in part:

"The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of

In fact the interests of the client were adequately protected by the stenographic record the trial court prepared expressly to relieve appellant of his concern. If still apprehensive, appellant could have asked the trial judge for an opportunity to apply to the Appellate Division to review the pretrial order or the direction that he sign the pretrial order. If that opportunity were refused, still counsel should know that a sufficient record, if the existing one were inadequate, could be prepared on application to the appellate court.

The order was not whimsical, or degrading, or humiliating. The most that could be said was that the trial court was in error. In such circumstances there is no sense in a toe-to-toe encounter between court and counsel. Such spectacles can only demean the judicial process. The essence of law and order is obedience to the judgments of a court. In

his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client."

The Canon of course does not call upon counsel to defy the court. Rather his duty is to protect his client within, and not outside of, the established framework of the judicial process. Respect for the judiciary goes to the essence of law and order. Hence *Canon No.* 1 says:

"It is the duty of the lawyer to maintain towards the Courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. * * * Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. * * *"

*Canon No.* 32 provides that:

"No client * * * is entitled to receive, nor should any lawyer render any service or advice involving disloyalty to the law whose ministers we are, or disrespect of the judicial office, which we are bound to uphold * * *."

the words of *Canon No.* 1,[4] "It is the duty of the lawyer to maintain towards the Courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance."

## II.

We turn now to procedural aspects of the case upon which this appeal ultimately turns.

In *N. J. Dept. of Health v. Roselle,* 34 *N. J.* 331 (1961), we discussed the difference between a "criminal contempt" and a so-called "civil contempt." We said *(pp. 337–338)*:

"* * * The word 'contempt' signifies a public offense. It refers to a contempt of *government;* there is no such thing as a contempt of a litigant. The expression 'criminal contempt' is as redundant as 'criminal crime,' and to talk of 'civil contempt' is to talk of 'civil crime.' We do not speak of 'criminal manslaughter' and 'civil manslaughter' to describe either the public and private wrongs or the public and private remedies. Rather we use 'manslaughter' to describe the crime and the prosecution, and 'wrongful death' to describe the private wrong and the civil action for a private recovery. Unhappily, with respect to contempt, the public remedy was denominated 'criminal contempt' and the private remedy was called 'civil contempt.' The result has been confusion both as to substance and procedure, a confusion which stems from loose expression rather than the nature of the subject.

On the substantive side, the labels have invited confusion as to the ingredients of the public and private wrongs and as to whether those wrongs are mutually exclusive. The contempt, *i. e.*, the public wrong, consists of a defiance of governmental authority. In the case of injunctive orders, it is more than the doing of the forbidden act or the failure to do what is ordered. The act or omission must be accompanied by a *mens rea*, a willfulness, an indifference to the court's command. The breach, if accompanied by that state of mind, challenges the authority of government whether the order be mandatory or prohibitory. With respect to the private wrong, the state of mind is irrelevant. * * * If the litigant has been denied what is due him under the order, he has suffered an injury for which he is entitled to supplemental relief. And his right to relief does not depend upon whether the order disobeyed is mandatory or prohibitory. The nature of the command may bear upon the nature of the supplemental redress but not upon the litigant's right to it. If the order is mandatory and the violator has the ability to perform, the court will ordinarily jail the offender until he complies. If the order is prohibitory, again the of-

4 See fn. 3, *supra*.

fender may be incarcerated until he undoes the violation if he has the ability to undo it. For example, if a barrier is erected in violation of an order prohibiting it, the defendant may be jailed until it is removed. In either situation, the court may withhold the coercive remedy if satisfied that the violation was innocent and compliance will forthwith ensue. But in any event, whether the order be mandatory or prohibitory and whether civil incarceration be appropriate or not, the injured litigant may be awarded damages to compensate for interim loss of the benefit of the order which was dishonored."

We discussed also the procedure to be followed in a proceeding designed to punish an offender for his affront to government, as distinguished from a proceeding instituted by a party to obtain relief for himself by reason of the wrong simultaneously inflicted upon him by the same act or omission. Thereafter Rule 4:87 was amended to reflect the views expressed in that opinion. The caption of the rule was amended to read "Contempt of Court and Enforcement of Litigants' Rights Related Thereto," thereby to differentiate at once between the public, penal remedy and the litigant's right to private relief. *R. R.* 4:87–1, 2, 3 and 4 relate to a penal prosecution for contempt, while *R. R.* 4:87–5 deals with the litigant's application for such relief as may be due him in his own individual interest.

Rule 4:87 of course applies only to the penal prosecution of such contempts as may constitutionally be prosecuted "summarily," meaning without indictment and without the constitutionally guaranteed right to trial by jury. Those contempts are described in *N. J. S.* 2A:10–1.[5] Our

---

[5] The statute reads:

"The power of any court of this state to punish for contempt shall not be construed to extend to any case except the:

a. Misbehavior of any person in the actual presence of the court;

b. Misbehavior of any officer of the court in his official transactions; and

c. Disobedience or resistance by any court officer, or by any party, juror, witness or any person whatsoever to any lawful writ, process, judgment, order, or command of the court.

Nothing contained in this section shall be deemed to affect the inherent jurisdiction of the superior court to punish for contempt."

See discussion in *N. J. Dept. of Health v. Roselle, supra,* 34 *N. J.,* at *pp.* 340–342.

rules of court provide for two modes of trial, depending upon whether the offense was committed in, or outside, the presence of the court. *R. R.* 4:87–1[6] deals with an offense committed in the presence of the court and permits the immediate entry of an order reciting the facts and adjudging the offender guilty of contempt. This short procedure may be used, as the rule says, "only if the judge certifies by order that he saw or heard the conduct constituting the contempt and that it was committed in his actual presence." This authority to deal *instanter* with an offense so committed arises from necessity, to support the judge's control of the courtroom. And since the judge knows of the offense by his own senses, he need not adduce proof of the wrong, but may merely certify the facts he witnessed in the order of conviction. The defendant's right to be heard is limited to the proof of material facts, if any, of which the court may be unaware, to the legal evaluation of the facts, and to punishment. In the case now before us, had the trial court intended to prosecute appellant for his contempt in refusing to obey its order, the situation would have come within this rule. The conduct occurred entirely within the sight and hearing of the judge in open court, and the judge could have acted immediately to end the obstruction before him.

*R. R.* 4:87–2, 3, and 4 deal with contempts other than those committed in the actual presence of the judge.[7]

---

[6] *R. R.* 4:87–1:

"A contempt of court may be adjudged and punished other than according to the other provisions of Rule 4:87 only if the judge certifies by order that he saw or heard the conduct constituting the contempt and that it was committed in his actual presence. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

[7] *R. R.* 4:87–2:

"Every other proceeding to punish summarily for contempt shall be instituted only:

(a) By a judge of the court concerned therewith;

(b) In a proceeding captioned 'In the Matter of _____ Charged with Contempt of Court';

The procedure under those rules, although also "summary" in the sense already stated, *i. e.*, that there is no right to indictment or the constitutional right to trial by jury, is not as abbreviated as the procedure authorized in *R. R.* 4:87–1 with respect to a contempt in the actual presence of the court. The reasons are, first, that there is no need to deal so abruptly with an offense which does not constitute an obstruction within the courtroom itself, and second, that since the court does not know by its own senses all of the facts constituting the offense, there must be a trial to adduce them. *R. R.* 4:87–2 and 4 vest the authority to institute a penal prosecution exclusively in a judge of the offended court, rather than in a litigant, and provide for clear notice of the nature of the proceedings and for safeguards appropriate in a prosecution of that kind.

Finally *R. R.* 4:87–5[8] deals with the procedure to be used by a litigant to assert his private right to relief, and speci-

---

(c) By an order for arrest or an order to show cause specifying the acts or omissions alleged to have been done or omitted contumaciously."

*R. R.* 4:87–3:

"A person charged with contempt shall be admitted to bail pending the hearing. The amount and sufficiency of bail shall be reviewable by a single judge of the Appellate Division."

*R. R.* 4:87–4:

"A proceeding under Rule 4:87–2 may be prosecuted only by the court or by an attorney of this State designated by the court, and, except with the consent of the person charged, may not be heard by the judge whose order was allegedly breached or who was allegedly offended. The court in its discretion may try the charge without a jury but this rule shall not supersede any statutory right to trial by jury."

[8] *R. R.* 4:87–5:

"(a) Notwithstanding the act or omission may also constitute a contempt of court, a litigant asserting a right to relief by reason thereof may seek such relief by application in the existing cause or by complaint if there is no existing cause. A judge shall not be disqualified merely because he signed the order sought to be enforced. If an order entered thereon provides for commitment, it shall specify the terms of release.

(b) An application or complaint under paragraph (a) may be tried with a proceeding under Rule 4:87–2 only with the consent of all parties concerned and subject to the provisions of Rule 4:87–4."

fies the conditions upon which his private claim for redress may be tried simultaneously with a penal prosecution arising out of the same act or omission.

In the case before us the proceedings were instituted on the initiative of the trial court. Nonetheless the trial court said "it is not what we call a criminal contempt, it is a civil contempt," and the judgment imposed a fine of $25 "pursuant to *N. J. S. A.* 2A:10–5" and ordered respondent committed to the county jail "until he shall pay to the County Clerk of the County of Ocean the sum so ordered and shall sign the Pretrial Order, unless the Court shall see fit sooner to discharge him." Thus, the trial court expressly disavowed a purpose to prosecute a penal offense and made it plain that the sole objective was civil—to coerce compliance with the order to sign the pretrial order. Confinement terminable upon a defendant's compliance is usually the hallmark of a civil proceeding. The imposition of a "fine" under *N. J. S.* 2A:10–5 is also consistent with a civil proceeding, since, as we explained in *N. J. Dept. of Health v. Roselle,* *supra,* 34 *N. J.,* at *pp.* 345–346, the "fine" authorized by that statute is in the nature of "costs" imposed in favor of the State to reimburse it for the pecuniary burden imposed by the breach of the order and the civil proceeding that breach precipitated.

Thus we have an unusual situation—a proceeding instituted for civil relief, not by an injured litigant, but by the court itself. The thesis held by the court presumably was that it has a positive role in the processing of litigation and hence has an interest, akin to that of a litigant, in the expeditious disposition of judicial business. It is true that the disposition of litigation does not depend upon the pleasure of litigants or their counsel. The calendar is in the firm control of the court. And as to the pretrial conference, the judge has an affirmative, forceful role, to achieve the ends the pretrial conference was designed to advance. See *Mayfair Farms Holding Corp. v. Kruvant Enterprises Co.,* 35 *N. J.* 558, 560 (1961); *Passaic Valley Sewerage Com'rs v. Geo. M. Brewster*

*& Son, Inc.*, 32 *N. J.* 595, 600 (1960); *Mazzuchelli v. Silberberg*, 29 *N. J.* 15, 26 (1959).

It may therefore be appropriate to recognize a power in the court to use coercive measures to compel compliance with court orders affecting the calendar. But we need not pursue that subject. The significant, and indeed pivotal, fact is that the pretrial judge did not institute a penal prosecution, but rather deliberately instituted a proceeding civil in nature to coerce compliance with the order. This being so, we must review the validity of the order with which compliance is sought, for if that order falls, the right to further relief in support of it must also fall. *United States v. United Mine Workers of America, supra*, 330 *U. S.*, at *pp.* 294–295, 67 *S. Ct.*, at *p.* 677, 91 *L. Ed.*, at *p.* 913. This is so in a proceeding by a litigant to compel compliance, or for monetary damages, unless the underlying order is already beyond direct review. See *Maggio v. Zeitz*, 333 *U. S.* 56, 69, 68 *S. Ct.* 401, 92 *L. Ed.* 476, 487 (1948). That limitation would seem to be inapplicable where the court itself is the moving party, but in any event, in the case at hand, the order to appellant to sign the pretrial order was still subject to direct review and, being interlocutory in nature, it is reviewable upon appellant's appeal from what, as to him, was a final judgment, *i. e.*, the order for his commitment.

Thus we are remitted to a consideration of the order directing appellant to sign the pretrial order. As we have already said, appellant was entitled to have noted in item 8 of the pretrial order the prior disposition of his client's claim of lack of jurisdiction. The order that he sign the pretrial order was therefore erroneous, and accordingly the commitment of appellant to compel compliance with it, together with the "costs" assessed against him, must be vacated.

We add that we accept the trial court's evaluation that appellant's conduct in refusing to obey the order, although contumacious, did not merit the institution of a penal prosecution. Our rules leave the prosecutorial decision to a judge of the affronted court. If a failure to institute a penal

prosecution is reviewable, we would agree that here the decision not to proceed in that way was a sound exercise of discretion. The issue which precipitated the controversy had not been explored theretofore, and although appellant's refusal to obey was willful, he did act in good faith, to no end other than to serve his client as he thought he had to. Good motive of course does not excuse a willful disobedience, but it may be considered in deciding whether a public purpose would be served by a prosecution for contempt. In the circumstances of this case, the trial judge's decision against a penal prosecution was eminently correct.

The judgment for commitment and imposing the "fine" is therefore vacated.

JACOBS, J., concurs in result.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL and SCHETTINO — 5.

*For affirmance* — None.