290 N.J. Super. 117 (1996)
675 A.2d 231
JAMES M. SALTZMAN, PLAINTIFF-APPELLANT,
v.
CINDY SALTZMAN, (FORMERLY NEWMAN, NOW GRIDER), DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 27, 1996.
Decided April 30, 1996.
*120 Before LONG and BROCHIN, JJ.
Alman & Michaels, attorneys for appellant (Emily Arnow Alman, of counsel and on the brief).
Respondent filed a pro se brief.
The opinion of the court was delivered by BROCHIN, J.A.D.
Plaintiff James M. Saltzman and defendant Cindy Saltzman (now Cindy Grider) were married August 18, 1985 and divorced by a judgment entered August 29, 1994. They have two children, Justin, born February 22, 1986, and Leah, born July 8, 1987. The children reside with defendant. Post-divorce proceedings between the parties have resulted in numerous court appearances, but we need refer only to two Chancery Division orders in order to dispose of this appeal.
The first is an order entered April 13, 1995 after an evidentiary hearing held March 3, 1995. That order reduced plaintiff's weekly child support obligation effective March 31, 1995 from $370 to $98 and entered judgment for $8,649.02, the amount of his arrears in child support as of March 27, 1995. This order also directed plaintiff to submit to examination by an employability expert and provided that either party could apply for a modification of plaintiff's support obligation after the employability evaluation had been submitted.
The second order, for enforcement of litigants' rights, was entered September 29, 1995 on the application of the County Probation Department. The order was entered following a hearing conducted that same day. No sworn testimony was offered or received. The ordering portion reads in full as follows:
IT IS THE ORDER of the Court that the obligor is continued on the present Order of $98.00 per week plus $20.00 per week on arrears for two minor children via Income Withholding. One missed payment and a Warrant shall be issued. The obligor shall pay his arrears in full in this matter by October 6, 1995 or a Warrant shall be issued.
*121 At the time of the September 29, 1995 hearing, plaintiff owed $7,875 in unpaid child support. The Probation Department informed the court at the hearing that on or about June 21, 1995, plaintiff had received a check for $33,682, which represented his share of the proceeds of a purchase money mortgage on some property that he and his uncle had owned in Florida.
These facts were not disputed. In the colloquy that ensued between the court and plaintiff's attorney at the September 29 hearing, the court attempted to ascertain what had happened to the $33,682 and whether plaintiff had misrepresented his financial situation by failing to disclose his interest in the mortgage during previous hearings and in papers which he had filed with the court.
Defendant and the representative of the Probation Department told the judge that they had not known about the mortgage until shortly before the current hearing, and the judge stated that, although he had presided over most of the marital proceedings between the parties, he had not known of it either. A letter from another attorney for plaintiff was read into the record. It was addressed to an attorney who appears to have represented plaintiff's co-mortgagee and it enclosed the original satisfaction of mortgage signed by plaintiff. The letter includes the following:
This is to confirm further that Sy Saltzman [the co-mortgagee] has agreed not to disclose to any party except under compulsion of legal process the pay-off of this mortgage to James M. Saltzman. I would appreciate receiving the aforesaid payments made payable to Mr. James M. Saltzman as soon as possible.
Plaintiff's counsel, who had not represented plaintiff in the earlier proceedings, told the court that she understood that the mortgage had been disclosed to the court during the prior proceedings and that plaintiff had used the proceeds to pay other pressing debts. She also argued that no inference adverse to plaintiff could properly be drawn from the quoted portion of the letter.
In an oral opinion, the court ruled as follows:
I'm troubled by the letter, that is the letter from New Jersey counsel, because it seemed as though it was intended that it not be disclosed to any third parties, which would include the Court or [defendant], and I'm troubled by the fact that in *122 March this was not disclosed. And whenever I fix $20 on arrears, $20 a week on arrears on a $7000 arrearage, I did so taking into account his situation at that point in time.
And I think it borders on fraudulent, and certainly deceptive if not fraudulent, to now come to  for me to find out that there was $33,000 plus, and now there's none left to pay child support which ought to be the highest and the first obligation that Mr. Saltzman paid.
Under these circumstances as has been presented to me over the last 15 minutes, it is my order that Mr. Saltzman will pay all the arrears, $7,875.02, by one week from today. The only thing that will stop me from issuing an ex parte arrest warrant will be an order of the Appellate Division, because I intend to arrest him and have a hearing, and if it's gone, then we'll deal with that. But I intend to sign a week from today, if the payment hasn't been made, an order for his arrest....
Plaintiff moved for reconsideration and for a stay of the order. In support of his motion, he submitted papers which he contended showed that he had disclosed his interest in the mortgage. The motion judge denied reconsideration and denied a stay. In a detailed letter opinion dated October 10, 1995, he discussed the transcripts of two prior hearings and the materials which plaintiff had submitted to him. He concluded, with ample support in the record, that at the March 1995 hearing before him plaintiff had affirmatively misrepresented that there were no assets available from which child support arrearages could be paid. The judge's opinion states:
Now, on September 29, 1995, Mr. Saltzman comes to the court and explains that he has spent the $34,000 plus which he received in June. Mr. Saltzman was made aware by the court on March 31, 1995 that this matter would be subject to review in September or earlier if there were a change of circumstance. He succeeded in concealing from the court and from Mrs. Saltzman his advantageous change of circumstance, but the court nonetheless had this matter scheduled for six month review on September 29, 1995.
Mr. Saltzman's actions in receiving the monies and failing to disclose them to the court either in the March proceedings or after he received them, and allegedly spending all of these monies so that none are now available to pay toward his judgment, are in willful contempt of this court's order and I shall enter an order for his immediate arrest.
That same day, October 10, 1995, a bench warrant was issued. The warrant refers to the September 29, 1995 order, and recites its provisions that plaintiff pay $98 a week in support, $20 a week in arrears, and "his arrears in full by October 6, 1995." The order also recites the certification of the Somerset County Probation *123 Department that plaintiff had failed to make the required payments by October 10, 1995. Lastly, it commands that plaintiff be taken into custody and jailed "until he shall be brought before the Court or until said Court shall make Order to the contrary."
Plaintiff moved before this court for leave to appeal and for a stay of the warrant pending appeal. We denied leave to appeal and we declined to stay the warrant. However, we ordered that this "warrant shall be executed only during business hours (8:30 AM  3:00 PM) Monday through Friday" and that "[a]ny action taken by the Court in connection with the executed bench warrant shall be consistent with R. 1:10-1."
Plaintiff then filed a notice of appeal. He purports to appeal from the September 29, 1995 order, from the motion judge's October 10, 1995 decision, and from the warrant for his arrest.
The October 10, 1995 decision is not an order or judgment. It is an explanation for the court's denial of plaintiff's motion for reconsideration or a stay. An appeal as of right may be taken only from a final order or judgment. It may not be taken from an opinion. Hughes v. Eisner, 8 N.J. 228, 229, 84 A.2d 626 (1951); see Heffner v. Jacobson, 100 N.J. 550, 553, 498 A.2d 766 (1985); Mills v. J. Daunoras Constr., Inc., 278 N.J. Super. 373, 378-79, 651 A.2d 114 (App.Div. 1995).
In the present case, the court cannot order plaintiff incarcerated for failure to pay his support obligation until it has determined that he has the ability to pay on the basis of evidence adduced at a hearing at which he has had the opportunity to testify. Pierce v. Pierce, 122 N.J. Super. 359, 361, 300 A.2d 568 (App.Div. 1973); Federbush v. Federbush, 5 N.J. Super. 107, 112-113, 68 A.2d 473 (App.Div. 1949); Biddle v. Biddle, 150 N.J. Super. 185, 191, 375 A.2d 285 (Ch.Div. 1977); see Department of Health v. Roselle, 34 N.J. 331, 338, 169 A.2d 153 (1961). The requirement of according plaintiff an ability-to-pay hearing before he can be incarcerated is explicit in the warrant, which orders the sheriff to take the plaintiff into custody until he "shall be brought before the *124 court," and it is necessarily implicit in the September 29 order, which threatens the issuance of a warrant, not incarceration. See Wei v. Wei, 248 N.J. Super. 572, 574, 591 A.2d 982 (App.Div. 1991); Essex County Welfare Bd. v. Perkins, 133 N.J. Super. 189, 195, 336 A.2d 16 (App.Div.), certif. denied, 68 N.J. 161, 343 A.2d 449 (1975).
A post-judgment order affecting spousal support may be a final judgment. Adams v. Adams, 53 N.J. Super. 424, 147 A.2d 568 (App.Div.), certif. denied, 30 N.J. 151, 152 A.2d 170 (1959). However, in a case such as this where the issue to be determined at the post-judgment proceeding is whether plaintiff should be incarcerated for failure to pay child support and his sole ground for resisting payment is his alleged inability to pay, the order directing him to pay and the warrant to bring him before the court are interlocutory. This is because his ability to pay and therefore whether he will be incarcerated to compel him to pay are still to be decided at an ability-to-pay hearing. Cf. In re Carton, 48 N.J. 9, 24, 222 A.2d 92 (1966) (a coercive civil order is interlocutory; an order of commitment to enforce it would be final); International Business Machines Corp. v. United States, 493 F.2d 112, 114-15 (2d Cir.1973), cert. denied 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); SEC v. Naftalin, 460 F.2d 471, 475 (8th Cir.1972). See also Wei, supra, 248 N.J. Super. at 574 n. 2, 591 A.2d 982. Since, with exceptions not relevant here, only final judgments are appealable as of right, plaintiff's appeal is subject to dismissal. Nonetheless, we will decide it on its merits.
Contrary to the premise of the first point of plaintiff's argument, whether or not he disclosed the mortgage from which he received $33,682 in proceeds is immaterial to whether or not the September 29, 1995 order directing him to appear before the court to prove his financial condition is proper. The March 31, 1995 order required him to pay only $20 a week on account of his arrears because he was thought incapable of paying more. The County Probation Department received information which tended to prove the contrary. It therefore noticed a hearing which resulted only in the issuance of an order that plaintiff appear *125 before the court to prove, if he can, his continuing inability to pay. That order is entirely proper whether or not plaintiff disclosed his interest in a mortgage.
Plaintiff's second point, that the order was an abuse of discretion because it found him in contempt and was a form of punishment, misconstrues the nature of the order. The motion judge's use of the term "contempt" in his order was a misnomer. It should properly have been termed an order in aid of litigants' rights. In other words, it was entered pursuant to R. 1:10-3, not R. 1:10-2. See Department of Health v. Roselle, 34 N.J. 331, 346, 169 A.2d 153 (1961); Pierce v. Pierce, 122 N.J. Super. 359, 300 A.2d 568 (App.Div. 1973); see also Pressler, Current N.J. Court Rules, comment 5 on R. 1:10-3. Ordering a hearing and commanding plaintiff to pay on threat of incarceration if he is able to pay was not an abuse of discretion.
The motion judge's denial of a stay pending appeal was also not an abuse of discretion. If the ability to pay hearing has not yet taken place, we surmise the reason may be that plaintiff has been unwilling to appear before the trial court voluntarily and this court's order limiting the hours for his arrest has enabled him to avoid being taken into custody. On proper notice, defendant may move before this court to modify our order.
The order and warrant appealed from are affirmed.