**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4947-17T3

T.K.,

     Plaintiff-Respondent,

v.

J.G.,

     Defendant-Appellant.

_____

Argued telephonically May 6, 2020 –
Decided May 26, 2020

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1984-15.

Do Kyung Lee argued the cause for appellant (Alter & Barbaro, attorneys; Bernard Mitchell Alter, and Do Kyung Lee, on the briefs).

Melissa Cohen argued the cause for respondent (Weinberg & Cooper, attorneys; Melissa Cohen, and Gale B. Weinberg, on the brief).

PER CURIAM

After a lengthy evidentiary hearing – near the end of which the pleadings of defendant J.G. (John, a fictitious name, as are all the other names we have used to identify the parties and their children) were stricken and his ability to either question witnesses or provide testimony limited – the family judge determined plaintiff T.K. (Tara) should be the children's primary residential custodian with the right to make decisions on all health issues. The judge also increased John's child support obligation. In appealing, John chiefly argues that the striking of his pleadings and the limitations placed on his testimony and ability to cross-examine constituted an abuse of discretion. We disagree and affirm.

The parties married in 1994. They have two children – S.G. (Stephen), who was born in 2005, and B.G. (Bernard), who was born in 2008 – and were living in Florida when, in 2010, they entered into a written shared child custody agreement. In August 2011, after an eight-day divorce trial, which focused mainly on financial issues, a Florida court entered a judgment that dissolved the marriage and required that John pay $453 per week in child support and $1 per month in alimony. The parties later moved to New Jersey to accommodate John's employment opportunities.

A-4947-17T3

In March 2015, Tara commenced this action, seeking to register the Florida judgment here so she could enforce the child support obligation – which defendant had stopped paying in September 2013 – and to obtain the court's assistance in securing therapy for the children that John had opposed. The following month, the parties entered into a consent order, which, among other things: (1) registered here the Florida judgment of divorce; (2) declared New Jersey the children's home state pursuant to the Uniform Child Custody Jurisdiction Act; (3) required Bernard's evaluation at the New York University Child Study Center (NYU) "to formulate a diagnostic impression and treatment plan, if necessary"; (4) obligated the parties to submit names of developmental pediatricians so the court could appoint one to evaluate Stephen; and (5) ordered the parties to equally share in the cost of the evaluations.

In June 2015, Dr. Justin Misurell of NYU evaluated Bernard and diagnosed him with attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD). John, however, refused to cooperate with Dr. Misurell's recommended treatment plan and failed to cooperate in having Stephen evaluated by Dr. Hugh Basses, whom the judge appointed to evaluate Stephen.

A-4947-17T3

In October 2015, Bernard's school suspended him for assaulting a classmate and refused to allow him to return without a psychiatric evaluation, to which John would not consent. Tara promptly sought the court's assistance, and the judge appointed Valerie Solimano, Esq., to serve as Bernard's guardian ad litem (GAL), and to investigate and provide a report on Bernard's mental health, the need for medication, and to consider whether Dr. Misurell's recommended treatment plan should be implemented. The judge ordered John to share in taking Bernard to therapy and to refrain from infringing on Tara's parenting time or her ability to speak with the children during his parenting time. The judge also ordered the parties to share in the GAL's fee.

The following month, the GAL moved on an emergent basis to suspend John's overnight visits with the children because he had the children sleeping in his garage with a space heater and at a distance from him and his current wife, who slept in a second-floor bedroom. The judge granted relief and required that John's visitation time be supervised.

In February 2016, the GAL issued her initial report, recommending that Bernard receive medication, that Dr. Misurell's treatment plan be implemented, and that Stephen participate in therapy. The GAL also recommended that Tara

A-4947-17T3

be designated residential custodian and the parent in charge of all medical decisions for both children.

The following month, the judge ordered a plenary hearing to adjudicate the propriety of the GAL's recommendations. Pending the outcome of the hearing, and pursuant to the parties' agreement, the judge designated Tara as the parent of primary residence with the authority to make medical decisions on the children's behalf, while permitting John, pending final disposition, unsupervised overnight visits on alternate weekends (during which the children would be permitted to sleep in an upstairs bedroom), and other weekly unsupervised dinner visits. By way of another motion, the judge ordered that there be a plenary hearing on child support.

In April 2016, Stephen was evaluated and was diagnosed with anxiety and a form of ADHD; he began therapy with Dr. Ethan Ehrenberg. Also in April, Tara moved for relief based on her claim that John had not paid his share of Bernard's therapy expenses. In June, the judge ordered John to reimburse Tara for half the outstanding bill and awarded Tara counsel fees and costs for having to seek relief. And in July, the judge determined that John was in arrears of nearly $10,000 in child support. John was ordered to pay $3000 by mid-August.

A-4947-17T3

Later, when the GAL determined and reported that the temporary arrangement had rendered John more combative[1] and had a potential to jeopardize the children's treatment and school enrollment, the judge held a conference with the GAL and the parties, and, in July 2016, ordered that both parents undergo psychiatric evaluations with Dr. Philip Muskin.

On July 29, 2016, the judge denied John's motion to suspend child support and eliminate Tara's designation as the parent of primary residence with primary medical decision-making authority. The judge also: restrained John from filing motions on issues already determined; required that he pay half the children's therapy expenses through the probation department and half the children's summer camp tuition within ten days; banned John from recording communications with the children and the children's doctors; and ordered John to pay counsel fees and costs to Tara.

In August 2016, the judge denied John's motion to modify (to zero) his child support obligation retroactive to March 2015 and, in the order, repeated the terms of the July 29, 2016 order that precluded motions on issues already decided. In October, the judge denied John's motion to reconsider, among other

---

[1]  According to the GAL, John had attempted to intimidate the children's doctors and teachers by personally serving on them improper subpoenas and by making harassing telephone calls, some of which were recorded, perhaps unlawfully.

A-4947-17T3

things, the requirement that he undergo a psychiatric evaluation. Once again John was ordered to cooperate with the GAL and Dr. Muskin. And, after a November 2016 telephone conference with the parties, the judge again ordered John to cooperate with the GAL and Dr. Muskin.

Because John failed to undergo the psychiatric evaluation, Tara moved in December 2016 to strike his pleadings. John cross-moved for: Tara's disclosure of the amount she had spent on this litigation; a postponing of child support until final judgment; an advance from Tara for the cost of the psychiatric evaluation; sanctions based on allegations that Tara had violated the parenting time order; additional parenting time; and counsel fees. On February 3, 2017, the judge denied Tara's motion to strike without prejudice, but he limited John's right to cross-examine at the hearing only to child custody issues because he viewed John's failure to pay Dr. Muskin's fee as contumacious, based on his findings, after a December 2016 hearing, that John had the ability to pay the fee. Again, the judge ordered John to comply with the prior orders and that he undergo Dr. Muskin's evaluation by February 17, 2017, or else John's pleadings would be stricken on the custody issue. The judge also ordered that the parties pay their shares of the GAL's fees. John's requests that Tara advance his share of Dr.

A-4947-17T3

Muskin's fee and for sanctions based on the allegation that Tara interfered with his parenting time were denied.

On March 7, 2017, the judge entered a scheduling order that listed the issues to be considered at the plenary hearing. The order also required the GAL's fee to be paid in full by March 15 to avoid the action's dismissal, and relieved John's counsel from the case. When John failed to pay his share of the GAL's fee, Tara advanced it to avoid the action's dismissal.

By way of additional motions, the judge entered an order on May 2, 2017, that lifted prior sanctions so John could "present his case on all previously court identified issues" at the May 10 hearing, while still authorizing the judge conducting the hearing to "draw a negative inference against [John] on the issue of a custody change as [John] did not pay his . . . share of the Dr. Muskin retainer, and/or was not evaluated by Dr. Muskin, and [because John] violated past discovery court orders."

The plenary hearing was conducted before a different judge over the course of twenty-two nonconsecutive days, starting on May 10, 2017, and ending on November 14, 2017.

John's contumacious approach to prior orders continued once the hearing commenced. For example, on May 15, the judge determined, over John's

objection, that the GAL would not be required to testify, and her report would be admitted into evidence instead, because John refused to pay his share of the GAL's fee. In June, when emergent issues arose about the children's health insurance and summer camp fees, the judge ordered John to pay the camp fees and to obtain health insurance by July 1 or else his pleadings would be stricken. After John cross-examined Tara for over six days, the judge finally barred his further questioning of her because John was not addressing anything relevant and the continued examination was both harassing and repetitive. The judge, however, did allow for further questioning of Tara by John after Tara finished her redirect testimony; this questioning proved to be harassing and repetitive as well, and the judge brought it to an end.

In November 2017, the judge terminated John's testimony because he had testified for six days and his testimony had become repetitive and entered into irrelevant areas. Tara also moved to strike John's pleadings and his testimony. On November 8, 2017, the judge entered an order that struck John's pleadings because of his failure to undergo a psychiatric evaluation; for the same reason, the judge also limited John "to cross-examination only if the [p]lenary [h]earing continues."

A-4947-17T3

The judge rendered thorough oral decisions on all aspects of the issues presented and in imposing sanctions on John's presentation in light of his failure to comply with the court's many orders. The judge's findings were memorialized in an order entered on December 8, 2017, which: awarded Tara sole custody of the children; set child support at $317.75 per week; provided Tara with sole decision-making authority over the children's medical issues; and awarded counsel fees in an amount to be determined. Counsel fees and costs in the amount of $320,777.82 were later awarded in Tara's favor.

John appeals, arguing the judge erred in: (1) striking his pleadings when less drastic relief could have been tailored under the circumstances; (2) making numerous evidentiary rulings; (3) admitting the GAL's report without requiring the GAL to testify; (4) failing to conduct in camera interviews of the children; (5) limiting both his direct testimony as well as his cross-examination of Tara; and (6) making insufficient findings on the proper level of child support. We find insufficient merit in these arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments about the first and fifth issues.

To prevent court orders from being ignored, our court rules allow for enforcement in a number of ways. As we have said, "[o]nce the court determines

the non-compliant party was able to comply with the order and unable to show the failure was excusable, it may impose appropriate sanctions." Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012) (citing Saltzman v. Saltzman, 290 N.J. Super. 117, 123 (App. Div. 1996)). The spectrum of appropriate sanctions is limited to those orders "as are just" to remedy a party's failure to comply, including the striking of that party's pleadings. R. 4:23-2(b)(3).

We review such decisions through application of an abuse of discretion standard. Milne, 428 N.J. Super. at 197-99. An abuse of discretion can be found "when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). When examining such a sanction, we will defer to the judge's factual findings so long as they are supported by "adequate, substantial, and credible evidence in the record." Milne, 428 N.J. Super. at 197 (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). The factfinding of family judges "receives particular deference because of 'the family courts' special jurisdiction and expertise in family matters.'" Ibid. (quoting Cesare, 154 N.J. at 413).

A-4947-17T3

As mentioned earlier, this litigation was marked by John's constant failure to comply with court orders, particularly those relating to his obligation to pay fees for evaluations or submit to a psychiatric evaluation. In her thorough explanation, the experienced family judge underscored the fact that by that time this matter had been pending for 601 days and that John's only suggested reason for failing to undergo an evaluation was his false claim that he could not afford Dr. Muskin's fee. John had no good faith reason for failing to comply.

The judge emphasized the great need for this psychiatric evaluation:

> It was absolutely imperative, axiomatic in my view now after 23 days of trial that Dr. Muskin evaluate both parties and I have been allowing much latitude in hearing testimony. I have been very open minded to being persuaded that perhaps [John] not going to Dr. Muskin had no bearing on the ultimate decision in this case [but] I find that [John] has been abusing the system.
>
> First, he did not comply with an order of the [c]ourt. I have to be mindful of moving the case along under [N.J.R.E.] 611 and under [N.J.R.E.] 403. I'm also mindful of the fact that the defendant has engaged in evasiveness during this trial, evasiveness during the pre-trial discovery phase. He's been disingenuous, obstreperous and really has shown contumacious behavior in this case. . . . I have given wide latitude and I'm entitled to wide latitude in controlling the manner of presentation in this trial . . . .
>
> Many of the defendant's arguments are incomprehensible . . . and . . . nonresponsive and all he

continues to do is criticize the prior judges, criticizes [the GAL], advance[s] ad hominem attacks against her and the plaintiff and his questions . . ., the repetitive questions in this case and the repetitive arguments which this [c]ourt has now heard on issues that were very narrowed by [another judge] in his last pretrial order, I have to take control of this trial and his testimony and his questioning of the plaintiff, which I allowed to go on for days because I'm so concerned about these children and I want to make the right decision . . . .

[T]he defendant keeps advancing an argument that I find to be disingenuous, that he could not undergo the psychiatric evaluation with Dr. Muskin because he could not afford the fee of $3,500 and I find that to be inexcusable. Dr. Muskin's role in this case was absolutely vital and it wasn't just about the plaintiff and her prior history and what [her] ability is now to parent these children and whether she's stable and what her conditions are. . . .

. . . I don't know how [John] can expect me to continue hearing day after day, question after question when he is in violation, comes into this trial with unclean hands, never says during the trial I'm going to come up with the money . . . for the evaluation at day 23. Enough is enough.

        . . . .

[Although he represented himself during the plenary hearing,] [h]e was able to come up with money to pay lawyers.[2] He was able to come up with the money to

---

[2]  The judge identified the three attorneys who represented John at various times in these proceedings, and noted there was a point when two attorneys represented him simultaneously.

> take depositions . . . which are costly. He was able to come up with money to pay for camp when I ordered it over the summer. He was able to come up with money to pay past due child support when he was arrested on the child support enforcement calendar. So, his entire argument is disingenuous, it's incredible, it's incredulous and I am going to . . . grant [Tara's] motion [for sanctions] because I find that [what is] going on is just repetitive, unnecessary questioning.

John presents no principled reason for this court to second-guess the experienced family judge, particularly in light of the undisputed fact that John did not submit to a psychiatric evaluation as ordered, and in light of the findings that John had the ability to pay the fee as further illuminated by the judge's observations of John during the course of this lengthy plenary hearing.

Indeed, all John's arguments are quite unavailing. He argues, for example, that the judge failed to consider, as a less severe sanction, "a conditional preclusionary order earlier in the trial conditioning any sanction on [his] continued failure to submit." This contention is utterly without merit. How many times must a court warn a litigant of the importance of complying with a court's directive before ultimately imposing a drastic sanction? The court exhibited extraordinary patience in attempting to secure compliance. The record reveals that John was initially ordered to undergo the evaluation in July 2016. Subsequent orders to this effect were entered in November 2016 and February

2017. John had more than ample warnings and opportunities and blithely ignored the court's orders in this highly important respect. The judge acted well within her discretion in, after so many hearing days, limiting further cross-examination by John and further testimony from him.

In reality, the sanctions imposed ultimately had little bearing on the hearing's outcome, since the repetitive and irrelevant stricken testimony presented little or nothing for the court to consider, as, when addressing the main issue, John merely downplayed the severity of his sons' emotional and behavioral needs while urging, without support, his own subjective beliefs about his parental methods.

In short, the judges who handled the matter at the pre-hearing stage, as well as the experienced judge who conducted this lengthy plenary hearing, showed great patience; John was offered numerous opportunities to comply before sanctions were imposed. There was no abuse of discretion here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4947-17T3