NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4840-13T1

LISA IPPOLITO,

     Plaintiff-Respondent,

  v.

TOBIA IPPOLITO,

     Defendant-Appellant.[1]

_____

<table>
<tr><td>

**APPROVED FOR PUBLICATION**

**November 9, 2015**

**APPELLATE DIVISION**

</td></tr>
</table>

Argued October 27, 2015 — Decided November 9, 2015

Before Judges Fisher, Rothstadt and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-147-13.

Angelo Sarno argued the cause for appellant (Snyder & Sarno, LLC, attorneys; Tobia Ippolito, on the pro se brief).

William M. Laufer argued the cause for respondent (Laufer, Dalena, Cadicina, Jensen & Boyd, LLC, attorneys; Mr. Laufer, of counsel; Kimberly Gronau Boyd and Carly DiFrancisco, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

_____

[1] Although this appeal arises from a summary contempt proceeding initiated by the trial judge pursuant to Rule 1:10-2 — and thus, should bear a caption in the form designated in Rule 1:10-2(a) — we utilize the caption in the related matrimonial action because the order that has been appealed was so captioned.

In this three-year old matrimonial action, the family judge instituted this contempt proceeding, pursuant to Rule 1:10-2, against defendant Tobia Ippolito upon the judge's receipt of a letter from counsel for plaintiff Lisa Ippolito; the letter asserted that defendant had violated the terms of a February 20, 2014 order, which prohibited defendant from "threatening or intimidating any expert in this matter." Because the judge erred by presiding over the very contempt proceeding he initiated, we vacate the order under review and remand the contempt proceeding to the trial court; the assignment judge is directed to forthwith designate a judge to preside over the contempt proceeding.

Having concluded that the matter must begin anew with another judge, we need not engage in an extensive discussion of the underlying circumstances. As noted, defendant had been ordered not to "threaten" or "intimidate" any expert based apparently on what the family judge perceived to be a pattern of such conduct when the matter was handled by another family judge who had recused himself. In responding to this appeal, plaintiff has regaled us with many of these earlier circumstances. These prior events may constitute relevant evidence in the contempt proceedings that will follow today's remand, but they have no bearing on the primary question before

us — whether the family judge who initiated the contempt proceeding should have presided over the trial of that matter.

There was a time when a hard-and-fast rule prohibited the initiating judge from presiding over a summary contempt proceeding. See In re Fair Lawn Educ. Ass'n, 63 N.J. 112, 115, cert. denied, 414 U.S. 855, 94 S. Ct. 155, 38 L. Ed. 2d 104 (1973); City of Bridgeton v. Jones, 228 N.J. Super. 325, 336-38 (App. Div. 1988). As we observed in Warren County Community College v. Warren County Board of Chosen Freeholders, 350 N.J. Super. 489, 512 (App. Div. 2002), aff'd in part, modified in part, 176 N.J. 432 (2003), before the 1994 amendment to Rule 1:10-2, "[i]t was reversible error for the same judge to hear the [summary contempt] proceedings." See also City of Bridgeton, supra, 228 N.J. Super. at 337 (finding it "fatally defective" for the initiating judge to preside over a summary contempt proceeding). This approach was adopted chiefly because of the potential for arbitrariness when a judge acts as "complainant, prosecutor, judge and executioner." In re Buehrer, 50 N.J. 501, 514 (1967). As explained by Chief Justice Weintraub:

> With respect to procedural antidotes, our practice in contempt matters is calculated to limit the risk of arbitrariness and the appearance of arbitrariness. So, for example, when the charge is a violation of a court order, the penal proceeding may not be

> heard by the judge whose order was allegedly contemned unless the defendant consents to his sitting. Thereby obviated is the risk which inhered singularly in the contempt area when the offended judge sat in judgment of his own charge.
>
> [Fair Lawn Educ. Ass'n, supra, 63 N.J. at 115 (citations omitted).]

Since 1994, however, Rule 1:10-2(c) (emphasis added) requires only that "[t]he matter shall not be heard by the judge who instituted the prosecution if the appearance of objectivity requires trial by another judge."[2] We are, therefore, required to consider whether "the appearance of objectivity" prohibited what occurred here.

As the record reveals, the judge's April 16, 2014 order to show cause was prompted not only by the April 15, 2014 written complaint of plaintiff's counsel regarding defendant's communication with a custody expert, but also the suit's prior history, which had led to orders limiting or prohibiting such communications. The order to show cause also appears to have issued before defendant had an opportunity to explain or respond. This sudden leap from a complaining letter of matrimonial counsel to the commencement of summary contempt proceedings might alone suggest the appearance of objectivity

---

[2] The prior versions of the Rule prohibited a judge from presiding over the summary contempt proceeding without exception.

had been lost.  But, even if that were not so, we are satisfied from the events that followed that the judge erred in presiding over the summary contempt proceeding he initiated.

We examine this question by first acknowledging that "[t]he summary prosecution of a contempt committed outside the presence of the court is inherently a highly sensitive matter," and, for that reason, warrants "scrupulous attention to the procedural safeguards embodied by the rules."  City of Bridgeton, supra, 228 N.J. Super. at 335.  Our review is de novo for these very reasons.[3]  Here, the judge opened the contempt proceeding — before even inviting the appearances of counsel — with a statement describing the proceeding by stating that he had directed defendant to

> show cause before this [c]ourt why his failure to comply with the [c]ourt's [o]rder of February 20, 201[4,] in addition to numerous prior court orders[,] which prohibited [d]efendant from directly contacting any experts in this matter[,] would not be subject to me holding him in contempt.

_____

[3] Because of concerns about the arbitrariness of the power of summary contempt, appellate review is immediately available as of right, R. 2:2-3(a)(1), and execution of sentence is automatically stayed for five days following its imposition or, if an appeal is taken, during the pendency of the appeal, R. 1:10-2 (incorporating the stay provisions of the rule applicable to contempt in the presence of the court, R. 1:10-1), although bail may be required if reasonably necessary.

> Now, let's be clear. Counsel is here, and we'll have your appearances in a minute. But I note . . . [c]ounsel is here. I note that the parties are here. And when I direct this following comment at Mr. Ippolito —
>
> I direct this at you, sir, with all due respect. I am not here to find you in contempt. I am here to find out if you are in contempt. Understand that? Big difference. Yes? No? All right. Well, we'll get to that in a minute. You want to talk to your lawyer, no problem. That was a pretty basic question.
>
> So, let's have Mr. Ippolito sworn.

After defendant was sworn as directed by the judge, and after the attorneys gave their appearances, the judge then turned to defense counsel and said

> So what I want you to do, Mr. Donahue, right now is your client is here in the [witness] box. He is here to tell me why he should not be held in contempt. All right? So please question him and he'll be cross-examined as we see fit.

Although the transcript lacks the dynamics of a live presentation, the first few pages of the transcript are nevertheless palpable; the judge spoke directly at defendant and made clear that defendant was there to explain his conduct. The procedural safeguards contained in Rule 1:10-2 are, as we have mentioned, intended to avoid the inherent arbitrariness of a summary contempt proceeding. The utilization of all those safeguards ensures the "appearance of objectivity." Their

absence, as readily revealed by the judge's opening comments, calls into question the objectivity of the proceedings.

For example, because the commencement of a proceeding pursuant to <u>Rule</u> 1:10-2 constitutes a charge of criminal conduct — "[t]he essence of the offense is defiance of public authority," <u>In re Yengo</u>, 84 <u>N.J.</u> 111, 120 (1980), <u>cert. denied</u>, 449 <u>U.S.</u> 1124, 101 <u>S. Ct.</u> 941, 67 <u>L. Ed.</u> 2d 110 (1981) — defendant was entitled to most of the safeguards accorded criminal defendants, with the exception of the right to indictment and the right, in some cases, to a jury trial. Defendant was entitled to "the presumption of innocence, the privilege against self-incrimination, the right of cross-examination, proof of guilt beyond a reasonable doubt, and the admissibility of evidence in accordance with the rules of evidence." <u>Ibid.</u>

The importance of these rights is further illuminated by their historical underpinnings. Similar circumstances prompted Justice Frankfurter to observe that "[b]itter experience has sharpened our realization that a major test of true democracy is the fair administration of justice," and that "[i]t is not for nothing that most of the provisions of our Bill of Rights are concerned with matters of procedure." <u>Sacher v. United States</u>, 343 <u>U.S.</u> 1, 23-25, 72 <u>S. Ct.</u> 451, 462-63, 96 <u>L. Ed.</u> 717, 731-32

(1952) (dissenting opinion); <u>see also</u> <u>Burdeau v. McDowell</u>, 256 <u>U.S.</u> 465, 477, 41 <u>S. Ct.</u> 574, 576, 65 <u>L. Ed.</u> 1048, 1051 (1921) (in which Justice Brandeis noted in his dissent that "in the development of our liberty insistence upon procedural regularity has been a large factor"). By directing defendant to take the oath and respond to the unsworn allegations conveyed by counsel's letter that led to the contempt proceeding, the judge sought defendant's waiver of his right against self-incrimination. And, by requiring that defendant testify first — asserting that "[defendant] is here to tell me why he should not be held in contempt" — the judge mistakenly assumed defendant was saddled with the burden of proving his innocence. The judge was greatly mistaken in this regard; it was the prosecution's burden to demonstrate defendant was in contempt beyond a reasonable doubt.[4] With one swift direction at the start of the proceeding, the judge deprived defendant of the presumption of innocence.[5]

---

[4] Interestingly, the judge called no other witnesses to testify — not even the expert who was allegedly threatened or intimidated by defendant's communication.

[5] To be sure, the judge concluded in his written opinion that defendant "intentionally" violated "the intent and the spirit" of the February 20, 2014 order. That is not the same as finding that defendant intentionally acted beyond a reasonable doubt. To the contrary, the entire tenor of the proceeding and the content of the judge's written opinion suggests to us — in
(continued)

Defendant emphasizes another procedural safeguard bypassed here. Rule 1:10-2(c) declares the proceeding "may be prosecuted on behalf of the court only by the Attorney General, the County Prosecutor of the county, or where the court for good cause designates an attorney, then by the attorney so designated" (emphasis added). No attorney was designated. Instead, the judge seems to have largely prosecuted the matter himself; he directed that defendant testify first and, after defendant was briefly examined by his own attorney and then briefly by plaintiff's attorney, the judge extensively cross-examined. Despite the Rule's unambiguous declaration as to whom may prosecute such a matter, the judge took on that role. Contrary to law, the judge who instituted the action became "complainant, prosecutor, judge and executioner." Buehrer, supra, 50 N.J. at 514.

If there was any question about the "appearance of objectivity" before the proceeding began, the judge's comments at the outset and the proceedings themselves eliminate any doubt.[6] The judge's written decision, which explained the basis

---

(continued)
reviewing the matter de novo — that the judge failed to apply the reasonable-doubt standard.

[6] We would note that the form of the order to show cause is also problematic. Although an alleged contemnor has no constitutional
(continued)

for his finding of contempt, was the judge's own expression of the reasons for the contempt proceedings. He stated that the history of prior difficulties with experts led to his concern when plaintiff's counsel wrote to him about defendant's communication with an expert; the judge opined in his written decision that "yet another expert had been made uncomfortable and was potentially poised to resign from his role in this case."[7]

For these reasons, we conclude the "appearance of objectivity" required that a different judge preside over the trial of the summary contempt proceedings.

We lastly consider plaintiff's argument that what occurred was not actually a summary contempt proceeding but a proceeding of the type permitted by Rule 1:10-3. That argument is without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We would add only that it is

---

(continued)
right to indictment, Yengo, supra, 84 N.J. at 120, he does have a right to notice of the charges. The assertion that defendant violated both the February 20, 2014 order and "addition[al] numerous other prior [c]ourt [orders]" was insufficient to put defendant on notice of what he was being asked to defend against. At the very least the earlier orders that the judge believed had been violated should have been specified.

[7] There was no proof to support that contention. The expert was never called to testify about his alleged discomfort.

clear from everything the judge said[8] and wrote[9] with regard to this proceeding — except the caption used on the order under review — that the judge believed he was conducting a summary contempt proceeding.[10] The word "contempt" is repeated throughout the hearing[11] when describing the nature of the

---

[8] Toward the end of the April 23 hearing, the judge and defense counsel engaged in a colloquy about the nature of the proceeding. When defense counsel argued that he did not anticipate that testimony would be taken, asserting "[g]enerally, [t]estimony isn't taken on [o]rders to [s]how [c]ause," the judge responded: "Well, on a contempt hearing testimony is taken, Frank . . . . [T]his was an order to hear a contempt citation" (emphasis added). There is no question that the judge realized this was a summary contempt proceeding and not a Rule 1:10-3 proceeding.

[9] In fact, the judge revealed his awareness of these inherently different proceedings in his written opinion when he stated that "[a] contempt of court may be considered an offense against governmental authority, and may be punished criminally[,]" but, "[o]n the other hand, 'a proceeding to afford a litigant supplemental relief from an adverse party's failure to obey a court's order is civil.'" In short, the judge clearly demonstrated his understanding of the difference; we therefore decline to view the proceedings as a de facto Rule 1:10-3 hearing when the judge intended no such thing.

[10] Although a court may conduct a hearing pursuant to Rule 1:10-3 simultaneously with a Rule 1:10-2 proceeding — as the last sentence of Rule 1:10-3 makes clear — this may only occur with the consent of the parties and, even then, the provisions of Rule 1:10-2(c) must still be honored.

[11] Even though courts occasionally refer to the conduct that would support Rule 1:10-3 relief as "civil contempt," see Anyanwu v. Anyanwu, 339 N.J. Super. 278, 290 (App. Div. 2001), certif. denied, 170 N.J. 388 (2001), that Rule is better understood and described without utterance of the word "contempt," see Ridley v. Dennison, 298 N.J. Super. 373, 381
(continued)

A-4840-13T1

proceeding and uttered more than a dozen times in the judge's ten-page written opinion. The preamble of both the order to show cause and the order that concluded the matter invoked Rule 1:10-2, and the judge, in his opinion, cited only to Rule 1:10-2 as the authority upon which the proceeding was based; he also cited numerous cases that dealt with the summary contempt power, demonstrating a clear understanding of the difference between the proceedings permitted by Rule 1:10-2 and those authorized by Rule 1:10-3. On the other hand, Rule 1:10-3 was never mentioned (except to distinguish it from the summary contempt procedure) or cited either during the hearing or in the judge's written opinion or final order.

The May 7, 2014 order under review is vacated. We remand to the assignment judge for the designation of another judge to preside over the summary contempt proceeding instigated by the order to show cause entered on April 16, 2014, and for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

(continued)
(App. Div. 1997); Bd. of Educ., Twp. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 508-09 (Ch. Div. 2001).

A-4840-13T1