**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0674-24

MARY O'SHEA,

    Plaintiff-Respondent,

v.

BOROUGH OF ENGLEWOOD
CLIFFS and LAURA BORCHERS,
in her official capacity as Records
Custodian of the Borough of
Englewood Cliffs,

    Defendants-Appellants.

_____

Submitted November 3, 2025 – Decided November 26, 2025

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2009-22.

Antonelli Kantor Rivera PC, attorneys for appellants (Gregory D. Emond and Spencer Taffet, on the brief).

Respondent has not filed a brief.[1]

---

[1] Donald M. Doherty, Jr., attorney for respondent filed a letter of non-participation.

PER CURIAM

This appeal seeks reversal of the trial court's imposition of a $73,500 contempt sanction upon a former municipal councilman for noncompliance with court orders in litigation brought by plaintiff, a document requestor under the Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 to -13. As we will describe in more detail, the appeal is presently unopposed, due to a settlement between the municipality and plaintiff, entered into after appellants' brief was filed.

We vacate the contempt sanction because it was not imposed in a procedurally appropriate manner and appears to exceed monetary limits under Rule 1:10-1.

I.

We endeavor to summarize the voluminous background succinctly. This matter stems from a series of OPRA requests by plaintiff Mary O'Shea, a resident of the Borough of Englewood Cliffs, which she submitted to the Borough of Englewood Cliffs and Laura Borchers in her capacity as the Borough's records custodian.

Among other things, plaintiff had made several requests under OPRA for copies of emails concerning Borough business allegedly conducted by former

2

Council President Tim Koutroubas, using his Borough government email account and personal Gmail account. Plaintiff made these specific email requests after learning during other litigation that Koutroubas had forwarded emails from his Borough account to his Gmail accounts. When the emails were not turned over, plaintiff filed the present OPRA case in Law Division.

During an order to show cause hearing in February 2024, plaintiff requested the trial court to sanction Koutroubas under Rule 1:10 or under OPRA provisions for failing to comply with court orders. The court conducted a hearing on the sanctions application on April 11, 2024. In a certification and in his testimony at that hearing, Koutroubas repeatedly asserted no Borough business had been conducted on his Gmail accounts. No logs were provided to the court substantiating emails sent from those Gmail accounts. Moreover, Koutroubas admitted that he deleted almost all of the emails that had been forwarded to the Gmail accounts.

The trial court found Koutroubas was not credible. It determined that he had engaged in contempt "in the face of the court" in violation of Rule 1:10-1. Specifically, the court sanctioned Koutroubas for his obstruction of court proceedings "over the course of two years" through his failure to provide a certification about his personal email accounts between 2021 and 2024, his

3

failure to disclose numerous email addresses, his "deleting emails which are now unrecoverable," and his general failure to be "forthcoming with the court."

The court imposed a $73,500 monetary sanction against Koutroubas for civil contempt, the court's order does not specify to whom the sanction was payable. The court also awarded plaintiff $47,524.47 in counsel fees.

Defendants (the Borough and its records custodian[2]) appealed from the October 29, 2024 order awarding plaintiff counsel's fees, as well as an April 15, 2024 order sanctioning Koutroubas.

While the appeal was pending, a partial settlement was attained between plaintiff and defendants. As described in correspondence to the court from counsel, defendants agreed to withdraw the appeal regarding the attorney's fees and plaintiff agreed to not participate in the remaining appeal regarding the sanctions. Hence, no opposition brief was filed by plaintiff. Defendants now ask this court to vacate, reduce, or remand the sanction on former Councilman Koutroubas.

Defendants argue they complied with all of the court's orders and turned over all relevant OPRA response documents. They maintain the personal Gmail

---

[2] We presume, but do not decide, that the Borough and the records custodian have standing to appeal the monetary sanction levied personally against the former Councilman.

A-0674-24

accounts of Koutroubas were not used to conduct Borough business and thus, were outside the scope of the OPRA requests. Defendants further argue the trial court's Rule 1:10-1 sanction was both procedurally and substantively defective in multiple respects.

## II.

Several principles of appellate review and court rules govern our analysis.

Appellate Review Standards

"Every summary conviction and judgment, by the Superior Court in the [L]aw [D]ivision . . . shall be reviewable by the [A]ppellate [D]ivision of the Superior Court . . . ." N.J.S.A. 2A:10-3; see also R. 2:10-4. The "review shall be both upon the law and the facts." Ibid.

"In a contempt case, we must generally review the record and make a de novo determination." In re Duane, Morris & Heckscher LLP, 315 N.J. Super. 304, 311 (App. Div. 1998); see also Amoresano v. Laufgas, 171 N.J. 532, 560 (2002). This is because "[t]he provision for de novo appellate review of summary contempt convictions is a fail-safe mechanism for assuring that the contempt power is not abused." In re Daniels, 118 N.J. 51, 62 (1990) (citations omitted).

A-0674-24

Additionally, a "trial court's determinations with respect to the applicability of OPRA are legal conclusions subject to de novo review." North Jersey Media Grp., Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 301 (App. Div. 2017) (citing K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 349 (App. Div. 2011)). Likewise, the appellate court's "standard of review is plenary with respect to [a trial court's] interpretation of OPRA and its exclusions." Gilleran v. Twp. of Bloomfield, 440 N.J. Super. 490, 497 (App. Div. 2015) (citations omitted).

Rule 1:10 Contempt of the Court

A trial court's authority "to punish for contempt is long established." Amoresano, 171 N.J. at 549 (citing In re Buehrer, 50 N.J. 501, 513 (1967)). It is, however, an "extraordinary power" that "should be exercised sparingly and only in the rarest of circumstances." Daniels, 118 N.J. at 61. The summary contempt power is a narrow exception to due process requirements "where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." Id. at 62 (quoting In re Oliver, 333 U.S. 257, 275 (1948)).

Generally, our court rules mandate certain procedures, including evidentiary hearings, for contempt-of-court adjudications. See R. 1:10-

1 (contempt in the presence of the court); R. 1:10-2 (summary contempt proceedings). "[T]he Rules of Court provide for two methods of trying the alleged contemnor, 'depending upon whether the offense was committed in, or outside, the presence of the court.'" Amoresano, 171 N.J. at 550 (quoting In re Carton, 48 N.J. 9, 21 (1966)).

The Supreme Court defined contempt in N.J. Dept. of Health v. Roselle, 34 N.J. 331, 337-38 (1961), as follows:

> The word 'contempt' signifies a public offense. . . . The contempt, i.e., the public wrong, consists of a defiance of governmental authority. . . . The act or omission must be accompanied by a [m]ens rea, a willfulness, an indifference to the court's command. . . . If a man is alleged merely to be in 'contempt' he may not know whether he is hailed to answer a criminal charge or to respond to a prayer for supplemental relief for the adversary party. Yet the object of the proceeding is of great moment, for if it is criminal, he is entitled to the safeguards accorded one charged with crime . . . .
>
> [(Internal citations omitted).]

The Court expanded on what "contempt" means in In re Yengo, 84 N.J. 111, 119-20, (1980), explaining that "[i]n general, contempt includes disobedience of a court order or misbehavior in the presence of the court by any person or misbehavior by an officer of the court in his official transactions. . . . The

7

essence of the offense is defiance of public authority."  (internal citations omitted).

Our Supreme Court has directed that before a trial court takes the extraordinary step of exercising its summary contempt power, the court should evaluate:  (1) the gravity of the conduct; (2) afford the party who is the subject of the contempt an "opportunity to retreat or explain the circumstances"; (3) consider whether immediate adjudication is necessary; (4) "evaluate whether the record will adequately disclose the essence of the contempt"; (5) "consider whether there is any appearance of personal confrontation or loss of objectivity that would require" referencing the matter to another judge "[i]f the contempt involves personal insult to the court"; and (6) if "imprisonment may be warranted," consider whether a "more formal charging process and reference to another judge for adjudication and sentence" would be appropriate to accord more due process.  Daniels, 118 N.J. at 67-68.

Contempt in the Presence of the Court Under Rule 1:10-1

"Acts committed in the presence or face of the court are governed by Rule 1:10-1."  Amoresano, 171 N.J. at 550.  Under Rule 1:10-1:

> A judge conducting a judicial proceeding may adjudicate contempt summarily without an order to show cause if:

(a) the conduct has obstructed, or if continued would obstruct, the proceeding;

(b) the conduct occurred in the <u>actual presence</u> of the judge, and was <u>actually seen or heard by the judge</u>;

(c) the character of the conduct or its continuation after an appropriate warning unmistakably demonstrates its willfulness;

(d) immediate adjudication is necessary to permit the proceeding to continue in an orderly and proper manner; <u>and</u>

(e) the judge has afforded the alleged contemnor an immediate opportunity to respond.

<u>The order of contempt shall recite the facts and contain a certification by the judge</u> that he or she saw or heard the conduct constituting the contempt and that the contemnor was willfully contumacious. Punishment may be determined forthwith or deferred. . . .

[(Emphasis added).]

All five of these enumerated requirements of the rule must be satisfied. <u>See</u> <u>Amoresano</u>, 171 N.J. at 550.

When proceedings are conducted under <u>Rule</u> 1:10–1, the judge "may act upon [the judge's] own knowledge of the facts . . . ." <u>In re Contempt of Ungar</u>, 160 N.J. Super. 322, 332 (App. Div. 1978). However, the "contemnor's right to be heard includes the right to present 'proof of material facts, if any, of which

the court may be unaware.'" Ungar, 160 N.J. at 332 (quoting In re Carton, 48 N.J. 9, 21 (1966)).

Our Supreme Court in Amoresano noted that "direct contempt, or contempt in the face of the court, is conduct that a judge can determine through his own senses is offensive and that tends to obstruct the administration of justice." Id. at 551 (quoting Yengo, 84 N.J. at 123); see, e.g., Kerr Steamship Co., Inc. v. Westhoff, 204 N.J. Super. 300, 310 (Law Div. 1985) (noting that a witness' perjury or false swearing may constitute contempt in the face of the court if its effect is to hinder and impede the administration of justice); State v. Gale, 226 N.J. Super. 699, 705-07 (Law Div. 1988) (noting that perjury may be charged and prosecuted as contempt); but see In re Lependorf, 212 N.J. Super. 284, 288-89 (App. Div. 1986) (ruling that, where an attorney's non-compliance with a court order directing counsel to provide a witness list was explained to the judge issuing the order on a basis neither insulting, frivolous, nor clearly inadequate, contempt proceedings were not permitted under Rule 1:10-1 and instead needed to be referred to another judge for a hearing pursuant to Rule 1:10-2).

Notably, "an attorney's failure to comply with a discovery order [cannot] be treated as a contempt" under Rule 1:10-1 and instead "[r]emedies for that

10

failure are available pursuant to R. 4:23 and R. 1:10-2." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.2 on R. 1:10-1 (2025).

Contempt sanctions for willful disobedience may be proceeded against a violator either "as a summary contempt order under Rules 1:10-1 or 1:10-2." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.3 on R. 1:10-2 (2025). The term "willful" is not defined in the contempt provisions but has been defined by our Supreme Court in other matters. The Court has defined "willful" as "deliberate, voluntary, or intentional, . . . but not necessarily malicious." State v. Moran, 202 N.J. 311, 323 (2010) (internal citations and quotation marks omitted).

Summary Proceedings for Contemptuous Conduct Under Rule 1:10-2

If the conduct at issue was not committed in the presence of the court, then the summary proceeding should be conducted in compliance with Rule 1:10-2. Rule 1:10-2 states, in pertinent part:

> (a) Institution of Proceedings. Every summary proceeding to punish for contempt other than proceedings under R. 1:10-1 shall be on notice and instituted only by the court upon an order for arrest or an order to show cause specifying the acts or omissions alleged to have been contumacious. . . .
>
> . . . .

(c) Prosecution and Trial. A proceeding under R. 1:10-2 may be prosecuted on behalf of the court only by the Attorney General, the County Prosecutor of the county or, where the court for good cause designates an attorney, then by the attorney so designated. The matter shall not be heard by the judge who instituted the prosecution if the appearance of objectivity requires trial by another judge. Unless there is a right to a trial by jury, the court in its discretion may try the matter without a jury.

"The procedural safeguards contained in Rule 1:10-2 are . . . intended to avoid the inherent arbitrariness of a summary contempt proceeding." Ippolito v. Ippolito, 443 N.J. Super. 1, 5 (App. Div. 2015); see also Buehrer, 50 N.J. at 514 (recognizing "the potential for arbitrariness" when a judge acts as "complainant, prosecutor, judge and executioner" in contempt proceedings). "The utilization of all those safeguards ensures the 'appearance of objectivity.'" Ippolito, 443 N.J. Super. at 5.

Although Rule 4:23-2(b)(4) within the civil discovery rules allows a trial court to make a contempt finding upon "the failure to obey any orders" the court must still "comply[] with the procedures set forth in R[ule] 1:10-1, et. seq." Canino v. D.R.C. Co., 212 N.J. Super. 620, 624 (App. Div. 1986); see Duane, Morris & Heckscher LLP, 315 N.J. Super. at 312 ("[A]n order issued under the court's inherent contempt of court powers must comply with the procedures set forth in R. 1:10."); see also Pressler & Verniero, Current N.J. Court Rules, cmt.

2.2.2. on R. 1:10-1 (2025) (explaining that "conduct declared to be 'contempt' pursuant to R. 4:23-2 . . . must nevertheless be properly adjudicated as constituted a contempt pursuant to R. 1:10-2; it is not an in facie contempt adjudicable under this rule" referring to Rule 1:10-1).

Other remedies may be imposed under Rule 1:10-3, but that provision was not invoked and followed here.[3]

## III.

Applying these contempt rules and principles of law, it is manifest that the monetary contempt sanction the trial court imposed here did not comport with appropriate procedures. Among other things, Rule 1:10-1 was not the proper vehicle for the court to impose contempt sanctions because the conduct

---

[3] Rule 1:10-3 "Relief to Litigant" proceedings for violations of the court's orders are completely separate from Rule 1:10-1 or Rule 1:10-2 contempt proceedings. See Bd. of Educ. of the Twp. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 509-10 (Ch. Div. 2001). Under Rule 1:10-3, there is no $1,000 sanction maximum, instead "[t]he goal [of the sanction] is to sufficiently 'sting' the offending party in order to compel compliance" going forward. Id. at 511 (quoting E. Brunswick Bd. of Educ. v. E. Brunswick Educ. Ass'n, 235 N.J. Super. 417, 422 (App. Div. 1989)). This "sting" need not be limited to the moving party's "actual damages," but must be within the offending party's "reasonable economic means." Holtham v. Lucas, 460 N.J. Super. 308, 322 (App. Div. 2019) (citations omitted). However, under the circumstances here, sanctions were not imposed under Rule 1:10-3.

A-0674-24

at issue relates to noncompliance with a discovery order under <u>Rule</u> 4:23-2, which should instead be pursued under <u>Rule</u> 1:10-2.  In addition, the trial court did not issue the certification required under subsection (e) of <u>Rule</u> 1:10-1 for contempt occurring in the so-called "face of the court."  <u>R.</u> 1:10-1(e).

We further note the $73,500 sanction amount far exceeded the <u>Rule</u> 1:10-1 maximum of $1,000 specified by N.J.S.A. 2C:43-3 and N.J.S.A. 2C:43-8. <u>Buehrer</u>, 50 N.J. at 513; <u>see also</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1 on <u>R.</u> 1:10 (2025) (noting that "the summary contempt rule is applicable, but only within the court's discretion, if the punishment may not exceed six months imprisonment . . . or a fine of $1,000 or both.").  In addition, the $73,500 figure (based upon a formula of a $100 daily sanction times the number of 735 days) exceeds the $5,000 limit specified in the OPRA statute for a third OPRA violation, although we make no definitive ruling in this unopposed appeal as to whether the OPRA limitation constrains a court's monetary contempt powers. <u>See</u> N.J.S.A. 47:1A-11 (setting forth the OPRA civil penalty amounts).

Nor can the contempt sanction be sustained, on this record, alternatively under <u>Rule</u> 1:10-2.  For one thing, the court did not follow the procedures under that provision.  In addition, the court's decision repeatedly referred to previous OPRA violations by the Borough and its officials, alluding to other cases it had

14

adjudicated. Although we appreciate the court's dissatisfaction with the previous instances of noncompliance, the prudent course of action—given that long history—was to have the contempt sanction proceeding presided over by another judge. Daniels, 118 N.J. at 65.

The $73,500 contempt sanction consequently is vacated, without prejudice to new proceedings that may be initiated under Rule 1:10-2 before a different judge, adhering to the prescribed steps and procedural safeguards. In reaching that conclusion, we by no means condone the apparent OPRA noncompliance identified by plaintiff and found by the court.

Vacated. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0674-24